EXHIBIT 2

## PHYSICIAN EMPLOYMENT AGREEMENT

**THIS PHYSICIAN EMPLOYMENT AGREEMENT** (this "Agreement") is made and entered into as of the Effective Date (as defined on Exhibit A) by and between Steward Medical Group, Inc. ("SMG"), an affiliate of Steward Health Care System LLC ("Steward Health Care" or "Steward"), a Delaware limited liability company, and the Physician (as identified on Exhibit A), an individual physician, licensed to practice medicine in Massachusetts (the "Physician"). SMG and the Physician may be referred to herein individually as a "Party" or collectively as the "Parties."

## RECITALS

**WHEREAS**, SMG employs qualified physicians to provide clinical, educational, research and medical-administrative services under its auspices, and to the patients of Steward hospitals and other affiliated health care facilities (each a "Hospital"); and

**WHEREAS**, SMG desires to engage the Physician to provide certain clinical, educational, research and medical-administrative services as described hereafter; and

**WHEREAS**, the Physician is willing and able to provide such clinical, educational, research and medical-administrative services for SMG in accordance with the provisions hereinafter set forth.

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements hereinafter expressed, other valuable consideration, the receipt of which is hereby acknowledged, and intending to be legally bound hereby, the Parties agree as follows:

1.    Employment.    SMG hereby employs Physician and Physician hereby accepts employment by SMG upon the terms and conditions set forth herein.

2.    Physician's Services and Responsibilities.

2.1    Effective Date.  Physician shall commence employment under this Agreement on the Effective Date (as defined on Exhibit A).

2.2    Generally.  Physician shall provide professional medical services to patients of SMG in accordance with the hours and at the practice location(s) and the Assigned Hospital(s) specified on Exhibit A, and at such other SMG locations and Steward Hospitals as Physician and SMG may mutually agree upon from time to time, in accordance with SMG's assignment, coverage and on-call schedules, which schedules shall be designed to assure that all of the medical needs of patients of SMG and the Assigned Hospitals, including urgent and emergency needs, are met in a competent, timely and responsive manner.  Physician's specific employment schedule shall be reasonably determined by SMG from time to time and may be revised or adjusted by SMG in consultation with Physician to accommodate SMG's staffing needs. Physician shall provide clinical services in Physician's Specialty (as defined in Exhibit A).  The Physician covenants and agrees to perform all services hereunder capably, faithfully, and to the

HIGHLY CONFIDENTIAL - FOIA CONFIDENTIALITY TREATMENT REQUESTED

best of the Physician's ability. The general allocation of physician's time shall be as set forth on Exhibit A.

2.3     Call Coverage. As the Chief of Cardiac Surgery, Physician shall assign night and weekend coverage and call responsibility and ensure that such coverage complies with on-call and coverage requirements of each Assigned Hospital and with generally accepted standards for care of cardiac surgery patients.

2.4     Adjustment. Notwithstanding any other provision of this Agreement, SMG shall reasonably determine and may adjust from time to time the specific professional duties to be performed by the Physician and the means and manner by which those duties shall be performed, such duties to be consistent with the Physician's training and experience.

2.5     Physician's Representations and Warranties. Physician represents and warrants at all times during the term of this Agreement that:

(a)     Physician is duly licensed, registered, and in good standing under the laws of the Commonwealth of Massachusetts to engage in the practice of medicine, and that said license and registration have not been suspended, revoked or restricted in any manner in this Commonwealth or any other state or commonwealth.

(b)     Physician is qualified for and has applied for, or will apply for, and has obtained, or will timely obtain, membership in good standing on the Medical Staff of each Assigned Hospital, with appropriate privileges in Physician's Specialty; provided that this Agreement is not, and shall not be construed as, any form of guarantee or assurance that Physician shall receive necessary Medical Staff membership or privileges for purposes of discharging Physician's responsibilities hereunder. The Medical Staff application, appointment and reappointment processes and the granting of privileges shall be solely governed by the Medical Staff Bylaws of the respective Assigned Hospital in effect from time to time.

(c)     Physician has current controlled substances registrations issued by the appropriate federal and state governmental agencies, which registrations have not been surrendered, suspended, revoked or restricted in any manner.

(d)     Physician is board certified in Physician's Specialty, board eligible in Physician's Specialty, or maintains comparable skills or otherwise meets similarly reasonable standards consistent with appropriate professional standards as determined in good faith by the President of SMG in consultation with the applicable Department Chair.

(e)     Physician has disclosed and will disclose to SMG the following matters, whether occurring at any time prior to or during the term of this Agreement: (i) any malpractice suit, claim (whether or not filed in court), settlement, settlement allocation, judgment, verdict or decree against Physician; (ii) any disciplinary, peer review or professional review investigation, proceeding or action instituted against Physician by any licensure board, hospital, medical school, health care facility or entity, professional society or association, third party payor, peer review or professional review committee or body, or governmental agency; (iii) any criminal felony conviction of Physician and any criminal misdemeanor conviction or period of incarceration resulting from a misdemeanor conviction of Physician within the past five (5)

2

HIGHLY CONFIDENTIAL - FOIA CONFIDENTIALITY TREATMENT REQUESTED

SHC00000026

years, excluding speeding and minor traffic violations; provided that if Physician has been convicted of any felony or misdemeanor within the past five (5) years, then Physician must disclose all prior criminal convictions; (iv) any allegation against Physician of filing false health care claims, violating anti-kickback laws, or engaging in other billing improprieties; (v) any period during which Physician, with or without reasonable accommodation, is or was unable to perform the essential functions of the practice of medicine, or during which Physician poses or may pose a direct threat to the health, safety or well-being of any patient, employee or other individual; (vi) any current or past use of illegal drugs, or any current or past dependency on alcohol or controlled substances; (vii) any allegation, or any investigation or proceeding based on any allegation, against Physician, of violating professional ethics or standards, or engaging in illegal, immoral or other misconduct (of any nature or degree), relating to the practice of medicine; (viii) any denial or withdrawal of an application in any state for licensure as a physician, for medical staff privileges at any hospital or other health care entity, for board certification or recertification, for participation in any third party payment program, for state or federal controlled substances registration, or for malpractice insurance; (ix) being listed on any of the Office of the Inspector General's Exclusion Database; or (x) Physician's expulsion from the Massachusetts Physician Health Services Program.

(f)     Physician shall abide by all Bylaws, rules, regulations, policies or directives of SMG, as well as the Medical Staff Bylaws and applicable department and/or division rules of the Assigned Hospital(s).

(g)     In connection with the provision of medical services hereunder, Physician shall use the equipment, instruments, pharmaceuticals and supplies of SMG and the Assigned Hospitals for the purposes for which they are intended and in a manner consistent with sound medical practice.

(h)     Physician has not been suspended or excluded from participating in any federal, state or private third party payor network or program and Physician shall participate in Medicare, Medicaid, other federal and state reimbursement programs, Blue Cross/Blue Shield, and other commercial insurance programs, and under the plan of any commercial insurer, health maintenance organization, preferred provider organization or other health benefit program with which SMG may contract or affiliate ("Payors").

(i)     Physician has disclosed and will disclose to SMG the existence of:  (i) all student loans or federal scholarships with the United States pursuant to the National Health Service Corps Scholarship Program, the Physician Shortage Area Scholarship Program or the Health Education Assistance Loan Program (together, "Student Loans"); (ii) any default or notice of default by Physician of a Student Loan; (iii) any repayment agreement between Physician and the Secretary of Health and Human Services ("HHS") entered into because of a default on a student loan ("Repayment Agreement"); and (iv) any default or notice of default on a Repayment Agreement.

(j)     Physician is not bound by any agreement or arrangements which would preclude, prohibit or restrict Physician from entering into, or from fully performing the services required under this Agreement or subject the SMG or any of its affiliates to any risk of legal action from any third party.

3

2.6    Standards of Practice. The Physician's services hereunder shall at all times be rendered in a competent and professional manner, consistent with quality assurance standards of SMG and each Assigned Hospital and in compliance with all applicable statutes, regulations, rules and directives of federal, state and other governmental and regulatory bodies having jurisdiction over the Physician or any Assigned Hospital; applicable standards of the Joint Commission; the Physician's board certifying organization if applicable; and then-currently accepted and approved methods and practices.

2.7    Other Steward Policies. Notwithstanding any provision herein to the contrary, the Physician shall at all times be subject to and comply with all Steward policies applicable to physicians made available to Physician.

2.8    Maintenance of Medical Records. The Physician agrees to enter in his or her patient's medical record all relevant medical information on a timely basis in accordance with the requirements of SMG, Medical Staff Bylaws of the Assigned Hospitals (as applicable), and Massachusetts laws and regulations. The Physician acknowledges and agrees that in furtherance of clinical integration, the SMG medical record for each patient must include all relevant medical information, including without limitation, clinical test results and interpretation summaries of procedures performed on the patient either at an Assigned Hospital or at any other facility, including a facility that is not affiliated with SMG or Steward.

3.    Term and Termination.

3.1    Term. Unless sooner terminated as provided herein, this Agreement shall remain in full force and effect for the initial term as set forth on Exhibit A. Unless sooner terminated as provided herein, upon the expiration of the initial term, this Agreement shall automatically renew for successive one (1) year terms.

3.2    Termination.

(a)    SMG may immediately terminate this Agreement upon the occurrence of any of the following:

(i)    Physician's death;

(ii)    Physician's disability for a continuous period in excess of ninety (90) days due to a mental or physical condition (other than pregnancy) that is determined by an independent medical examiner selected by mutual agreement of the Parties to be a permanently disabling condition or a condition that will impair Physician's ability to perform Physician's obligations hereunder beyond said ninety (90) day period;

(iii)    Physician's license to practice medicine or Physician's medical staff membership or privileges at any Assigned Hospital or any other hospital or healthcare facility are denied, suspended, revoked, not renewed, or restricted in any manner. This provision shall not apply to a decision by a Hospital to not allow a Physician to perform certain clinical procedures as part of their application for medical staff privileges;

4

                SHC00000028

(iv) Physician engages in unprofessional, unethical or fraudulent conduct, as determined by SMG's Professional Conduct Committee pursuant to the policies and procedures of such committee (including without limitation, any form of harassment of any individual(s)); or: (i) is found guilty or liable of such conduct by any court, governmental authority or board, institution, organization, or professional society having jurisdiction to judge the conduct of Physician; (ii) Physician enters into a settlement agreement pertaining to an allegation against the Physician for unprofessional, unethical or fraudulent conduct; or (iii) Physician's conduct is proven to be libelous or slanderous to SMG by any court, governmental authority or board, institution, organization, or professional society having jurisdiction to judge the conduct of Physician;

(v) Physician is excluded from Medicare, Medicaid, or any other federal health care program;

(vi) Physician's primary malpractice insurance lapses or is terminated due to Physician's claims experience or Physician's error or omission;

(vii) Material breach by Physician of any term of this Agreement (including, without limitation, Section 8) which breach has not been cured to the reasonable satisfaction of SMG within thirty (30) days after notice to Physician of such breach, provided, however that such opportunity to cure shall not apply to violations which jeopardize patient safety or compromise the quality of medical care offered by SMG or the Assigned Hospital;

(viii) Default or notice of default on a Student Loan, or default or notice of default on a Repayment Agreement;

(ix) Refusal by the Physician to enter into a Repayment Agreement with HHS;

(x) Suspension or exclusion of the Physician from any third party payment program in which SMG is a participating provider;

(xi) Material violation of any of SMG's policies and procedures applicable to employed physicians, which violation is not cured to the reasonable satisfaction of SMG within thirty (30) days after notice to Physician of such violation, provided, however that such opportunity to cure shall not apply to violations which jeopardize patient safety or compromise the quality of medical care offered by SMG or the Assigned Hospital; or

(xii) Bankruptcy, insolvency or cessation of operations of SMG; any voluntary or involuntary petition for bankruptcy, dissolution, liquidation or winding-up of the affairs of SMG; or any assignment by SMG or for the benefit of creditors.

(b) Physician may terminate his/her Physician Employment Agreement if SMG breaches any material term of the Physician's Employment Agreement, which breach has not been cured within thirty (30) days after written notice of such breach.

5

HIGHLY CONFIDENTIAL - FOIA CONFIDENTIALITY TREATMENT REQUESTED    SHC00000029

(c)     Either SMG or Physician may terminate Physician's Employment Agreement, with or without cause, without penalty, at any time upon at least ninety (90) days' prior written notice to the other party.

3.3     Effect of Termination.

(a)     Unless otherwise described herein or in the SMG compensation policy applicable to Physician at the time of the termination, upon termination of a Physician's employment with SMG, Physician shall be entitled to receive such base salary, fringe benefits, if any, accrued under the terms of this Agreement, but unpaid, as of the date of said termination, less any amounts owed by Physician to SMG pursuant to this Agreement.  Upon termination, Physician shall not be entitled to receive compensation for unused personal or sick days. Payment for accrued vacation days shall be subject to SMG's vacation policies then in effect. Except as may be provided for in this Agreement, all SMG employee benefits, including but not limited to the provision of professional liability insurance coverage, shall terminate on the effective date of termination.

(b)     Upon termination of a Physician's employment with SMG, whether by mutual agreement or otherwise, neither party shall have any further obligation hereunder except for: (i) obligations accruing prior to the date of termination in accordance with this Agreement; and (ii) obligations, promises, or covenants which are expressly made to extend beyond the term of this Agreement.

(c)     Upon termination of a Physician's employment with SMG, Physician shall immediately deliver to SMG sole custody and total, exclusive, and complete use of its medical records, premises, equipment, and supplies.  In addition, Physician shall immediately surrender and refrain from using any user name and password with respect to accessing SMG's health information system.

(d)     If Physician terminates his/her employment with SMG without providing SMG with the required prior written notice as set forth in Section 3.2(b) or (c), Physician shall pay liquidated damages to SMG in an amount equal to a prorated amount of the Physician's base compensation based upon the actual number of days of notice that Physician failed to provide. To the extent permitted by applicable law, Physician authorizes SMG to withhold from any amounts owing to Physician, whether in the form of salary, incentive compensation, and reimbursement or otherwise, the full amount of any liquidated damages owed in accordance with this paragraph.

(e)     In the event that Physician's employment with SMG terminates in advance of the date on which SMG agrees to provide tail coverage for Physician's medical malpractice insurance as indicated on Exhibit A, SMG shall not provide Physician tail coverage for the period of time during which Physician was employed by SMG; provided, however, that in the event SMG terminates Physician's employment without cause, SMG will provide tail coverage for Physician's medical malpractice insurance for the period of time during which Physician was employed by SMG.  Notwithstanding the foregoing, SMG may provide Physician the option to purchase tail coverage through Tailored Risk Assurance Company, Ltd. ("TRACO").  In the event that Physician elects to purchase tail coverage through TRACO, Physician authorizes SMG

6

HIGHLY CONFIDENTIAL - FOIA CONFIDENTIALITY TREATMENT REQUESTED    SHC00000030

to withhold from any amounts owing to Physician, whether in the form of salary, incentive compensation, reimbursement or otherwise, the full payment due for the purchase of the tail coverage in accordance with this paragraph.

       (f)     In the event that SMG terminates Physician without cause, at SMG's sole election, SMG may permit the Physician to continue working pursuant to this Agreement until the termination effective date specified by SMG, or SMG may require, at any time during the period between SMG's provision to Physician of its termination notice and the effective date of termination, that Physician immediately cease performing services hereunder. If SMG requires Physician to cease providing services prior to the termination date in accordance with this Agreement, SMG shall pay Physician the prorated amount of Physician's base compensation based upon the number of days remaining until such termination date, such amount to serve as Physician's final salary and bonus payment (subject to payment of accrued vacation as set forth above), and shall continue to provide medical and dental benefits until the termination date.

    3.4    <u>Suspension; Opportunity to Cure</u>. If SMG believes that the Physician has committed a material violation of this Agreement, SMG may, as an alternative to termination and in its sole discretion, by written notice to the Physician describing the material violation, suspend the Physician with compensation, except to the extent otherwise required by the terms of a particular research grant, for a specified period of time or provide the Physician with a specified period of time in which to cure the violation. These alternatives to termination are within the sole discretion of SMG and are not entitlements of the Physician. The fact that SMG may implement one or both of these alternatives on one or more occasions does not create the basis for the Physician to claim that the Physician has a right to either or both alternatives.

    3.5    <u>Resignation from Facility Medical Staffs</u>. In the event SMG terminates this Agreement pursuant to Section 3.2(a)(i) through Section 3.2(a)(xi), inclusive, the Physician will resign from the medical staff of each Assigned Hospital; and the Physician irrevocably appoints the SMG President as the Physician's attorneys-in-fact to submit such resignation on the Physician's behalf if the Physician fails to do so within seventy-two (72) hours after such termination. The Physician hereby holds SMG harmless and releases it, its designees and each Assigned Hospital and their respective boards of trustees and officers from any liability therefor. The Physician acknowledges and agrees that the resignation of medical staff privileges shall not be subject to any review, hearing or other due process rights under the Medical Staff Bylaws or other governing policies of any Assigned Hospital or by any court or otherwise, which review, hearing and rights (if any) the Physician hereby specifically waives. The Physician has the right to reapply for privileges in accordance with the Medical Staff Bylaws of the Assigned Hospital(s). Notwithstanding the foregoing, SMG, in its sole discretion, shall have the right to determine whether it is in an Assigned Hospital's best interest to permit the Physician to remain a member of the medical staff of the Assigned Hospital following termination or expiration of this Agreement and, to that end, waive its right to enforce this <u>Section 3.5</u> without affecting its rights under any other provision of this Agreement. SMG agrees that it will exercise its power to submit a resignation on the Physicians behalf, if at all, no more than thirty (30) days after termination of this Agreement pursuant to Section 3.2(a)(i) through Section 3.2(a)(xi), inclusive.

HIGHLY CONFIDENTIAL - FOIA CONFIDENTIALITY TREATMENT REQUESTED    SHC00000031

4.    <u>Compensation and Benefits</u>.  In consideration of the Physician's services provided pursuant to this Agreement, SMG agrees to pay the Physician the base compensation, and provide certain employment benefits, as specified on <u>Exhibit A</u>.

5.    <u>Space, Equipment, Supplies, Non-Physician Personnel</u>.  SMG shall provide, or arrange for the provision of, all of the space, equipment and supplies as are required, in the reasonable judgment of SMG following consultation with the Physician, for the proper provision of services to be provided under this Agreement.  Such space, equipment and supplies shall be made available at the cost and expense of SMG.  SMG shall provide, or arrange for the provision of, all non-physician personnel required, in the reasonable judgment of SMG, for the proper provision of services to be provided under this Agreement.

6.    <u>Patient Services Billing and Assignment of Fees</u>.  As a condition of the Physician's employment hereunder, the Physician hereby assigns to SMG the right to charge and bill for all clinical professional services performed by the Physician for, or under the auspices of, SMG, and SMG shall have the right to receive, hold and disburse all revenue derived from the Physicians' services.  The Physician shall act diligently and cooperate fully with SMG in facilitating such assignment and billing, including completing all forms necessary for the billing of such claims by SMG.  Charitable or free medical services rendered by the Physician shall be reported as such to SMG.  The Physician shall cooperate with SMG in the completion of any forms and the submission of any information necessary for SMG to receive third-party reimbursement for services rendered by the Physician.

7.    <u>Research and Related Obligations; Outside Activities</u>.

7.1    Physician shall comply with any and all policies of the Assigned Hospital(s) relating to research, including, without limitation, policies regarding the appropriate documentation and assignment of intellectual property associated with research activities sponsored or supported by such Assigned Hospital(s).

7.2    Physician shall comply with SMG's policies regarding disclosure of outside activities, including providing SMG a complete and true copy of every consulting or other agreement to which Physician, or an entity owned or controlled by Physician, is currently a party that involves compensation or other remuneration of any kind involving, relating to or associated with the practice of medicine, research, teaching, healthcare, pharmaceuticals, medical devices, biotechnology or any entity which is, becomes or may become a vendor of SMG, the Assigned Hospital or Steward Health Care.  If any such arrangements are not in writing, Physician shall provide a written summary to SMG.  Except with the written approval of SMG, Physician shall not enter into or continue any consulting agreements or engage in other professional activities related to or associated with the practice of medicine, research or teaching during the term of this Agreement. SMG may waive the written approval requirement of this Section 7.2 on a case-by-case basis if Physician's outside activities are performed  in a manner that does not  interfere with the performance of Physician's obligations under this Agreement and in a manner that does not damage the reputation of Steward or any entity that controls, is controlled by, or is under common control with Steward; **provided however** Physician shall comply with SMG's notice and disclosure requirements as described herein.

8

7.3    Physician shall indemnify and hold harmless SMG and its affiliates, directors, officers, employees and agents from and against any loss, cost, damage, claim or liability, including reasonably attorney's fees, arising out of Physician's failure to disclose to SMG any activity which may constitute a conflict of interest or which may violate any law, rule, regulation, requirement, accreditation standard or other obligation applicable to SMG or the Assigned Hospital.

8.    Steward Health Care System Referrals.  Physician shall refer patients for all inpatient and outpatient services (including, but not limited to, medical and surgical services, imaging studies and laboratory tests) within the Steward Health Care System or to an entity with which Steward has an established clinical referral relationship, unless: (a) a patient expresses a preference for a non-Steward provider; (b) the patient's insurer selects the provider; or (c) in Physician's judgment, a referral to a Steward provider is not in the patient's best interest.  To monitor compliance with this requirement, referrals by Physician will be tracked by SMG and reported to Physician on a quarterly basis.  Failure to comply with this provision, or any other provision of this Agreement, shall be grounds for termination by SMG pursuant to Section 3.

9.    Electronic Medical Record and Electronic Prescribing.  SMG has adopted electronic medical record and electronic prescribing systems.  Such systems will be installed in every SMG practice location.  Physician shall use such electronic medical record and electronic prescribing systems to the full extent of their capacity.

10.    Disclosure of Information.

10.1    Proprietary Information.  All records, files, reports and documents, including any electronic or digital version of the same and any software provided by SMG, pertaining to services, operations, plans, or methods of SMG, belong to and shall remain the property of SMG and all copies of such material shall be returned by Physician to SMG on or prior to the effective date of any termination or expiration of this Agreement.  Physician recognizes and acknowledges that the terms of this Agreement, the names and addresses of patients treated by Physician or other members of SMG, as well as SMG's proprietary information and trade secrets as they may exist from time to time, are confidential, valuable, special, and unique assets of SMG.  Physician also recognizes and acknowledges that the systems, protocols, policies, procedures, manuals, reports, data bases, documents, instruments and other materials used by SMG are proprietary to SMG, and are valuable, special and unique assets of SMG.  Physician shall not, during or after the term of this Agreement, disclose SMG's proprietary information or trade secrets, or the terms and conditions of this Agreement, to any other person or entity for any reason or purpose whatsoever (other than disclosure of the terms and conditions of this Agreement (i) to his personal financial, tax and legal advisors provided that such advisors agree to maintain the confidentiality thereof and (ii) to the extent necessary to enforce his legal rights hereunder), without the written consent of SMG.

10.2    Patient Information.  Physician further agrees that he/she shall maintain all patient information as confidential, and shall use or disclose such patient information only in accordance with the policies and procedures of SMG and the Assigned Hospitals, including without limitation, the applicable Notice of Privacy Rights and Practices, and in a manner consistent with those requirements imposed by state and federal law, including without limitation the provisions

9

of the Health Insurance Portability and Accountability Act and the regulations promulgated thereunder.

11.    Corporate Compliance. The Physician acknowledges and understands that Steward Health Care has adopted a Code of Conduct and SMG and the Assigned Hospitals have each adopted and implemented a corporate compliance program designed to promote the prevention, detection and resolution of conduct that does not conform to federal and state statutory and regulatory requirements and the requirements of third party payor programs, as well as their own ethical and business policies. The Physician represents and covenants that he will: (a) comply with all applicable federal and state statutes and regulations, third party payor requirements, the Steward Code of Conduct, and SMG's and the Assigned Hospital(s)' commitment to conduct their business in compliance with their respective ethical standards and business policies; and (b) report to SMG and the respective Assigned Hospital in writing any known or suspected violations of any statutory or regulatory provision, third party payor requirements, the Steward Code of Conduct, or SMG's or the respective Assigned Hospital's ethical standards and business policies. SMG will provide the Steward Code of Conduct to the Physician. Contemporaneously with execution of this Agreement, Physician is required to sign the attestation attached hereto as Exhibit C.

12.    CORI Check. The Physician agrees to consent to SMG performing a background check, including but not limited to a so-called Criminal Offender Record Information ("CORI") check on the Physician and to reasonably cooperate with SMG in obtaining said CORI check.

13.    Employee Health and Drug Testing Requirements. SMG and the Physician desire to protect the health and welfare of patients in part by ensuring that the Physicians of SMG do not, by their physical condition, present any unreasonable risks to patients of SMG or patients of any Assigned Hospital to which the Physician may provide services on behalf of SMG. Accordingly, SMG agrees to maintain and Physician agrees to comply with reasonable SMG policies and protocols which shall include participation by Physician in: (a) Physician health programs designed to protect patients from communicable diseases and which shall include, but not be limited to, vaccination tracking and screening; (b) a pre-employment physical examination and evaluation after a conditional offer of employment has been made; and (c) drug and/or alcohol testing as part of Physician's pre-employment physical examination and evaluation referenced above, as well as in response to a reasonable suspicion of drug or alcohol use that is either contrary to SMG's or a Assigned Hospital's policies or that may impair the Physician's performance of duties hereunder. Physician acknowledges and agrees that his/her satisfactory participation in, and results derived from, these programs will be an ongoing condition of employment, the failure of which shall constitute a breach of a material term of this Agreement.

14.    Non-Solicitation. Physician hereby agrees that Physician will not, directly or indirectly, during the term of this Agreement and for a period of one (1) year after the cessation of employment: (a) initiate an offer to employ, solicit for employment, or employ any person employed by or engaged by SMG; or (b) initiate contact with or solicit, verbally or in writing, the business or care of any patient of SMG or its affiliates, or of any physician (including Physician) who is an employee of SMG; provided, however, any such patient shall retain the right to choose Physician as his or her physician after the Physician's employment with SMG terminates. SMG shall, consistent with recommended practices of the American Medical

10

SHC00000034

Association, and as required by the Massachusetts Board of Registration in Medicine, notify patients of the Physician's termination from SMG, and shall provide contact information for the Physician. Physician acknowledges that SMG and its affiliates would suffer irreparable harm if Physician breaches this <u>Section</u> of the Agreement and thus agrees that SMG and its affiliates would be entitled to injunctive relief in the event of such a breach. In addition, Physician agrees that Physician will be liable for all attorneys' fees and costs incurred by SMG and its affiliates in an action to enforce this <u>Section</u> of the Agreement.

15.    <u>Miscellaneous</u>.

15.1    <u>Access of the Government to Records</u>.    To the extent that the provisions of Section 1861(v)(1)(I) of the Social Security Act [42 U.S.C. §1395x(v)(I)] are applicable to this Agreement, the parties agree to comply therewith.

15.2    <u>Other Contracts Between the Parties</u>.    SMG shall maintain a master list of contracts between the Parties.

15.3    <u>Governing Law</u>. This Agreement shall be governed and interpreted in accordance with, and the rights of the parties shall be determined by, the laws of The Commonwealth of Massachusetts.

15.4    <u>Severability</u>.    If any provision of this Agreement shall be declared invalid or illegal for any reason whatsoever, then notwithstanding such invalidity or illegality, the remaining terms and provisions of this Agreement shall remain in full force and effect in the same manner as if the invalid or illegal provision had not been contained herein.

15.5    <u>Amendment</u>.    No alteration or modification of this Agreement including any Exhibit, shall be valid unless made in writing and executed by each of the parties hereto.

15.6    <u>Counterparts</u>.    This Agreement may be executed in more than one counterpart, and each executed counterpart shall be considered as the original.

15.7    <u>Vested Rights</u>.    No amendment, supplement or termination of this Agreement shall affect or impair any rights or obligations, which shall have theretofore matured hereunder.

15.8    <u>Successors</u>.    In the event that SMG merges, or is consolidated into, any other entity(s) or in the event that SMG sells or transfers substantially all of its assets to another entity, the terms of this Agreement shall inure to the benefit, and be assumed by, the entity resulting from such merger or consolidation or to which SMG's assets shall be sold and transferred.

15.9    <u>Notices</u>. Any notice or other communication by one party to the other shall be in writing and shall be given, and be deemed to have been given: (a) if hand delivered, upon delivery; (b) if mailed, postage prepaid, certified mail (return receipt requested), on the second business day after mailing; or (c) if sent by an overnight courier service, the next business day after depositing with such courier, in each case addressed as follows:

11

SMG:                    Steward Medical Group, Inc.
                        Attn: Chief Operating Officer
                        500 Boylston Street
                        Boston, MA  02116

With a Copy to:         Joseph C. Maher, Jr., Esq,
                        General Counsel
                        Steward Health Care System LLC
                        500 Boylston Street
                        Boston, MA  02116

Physician:              See Exhibit A

Any party may change the address for notice by notifying the other party, in writing, of the new address.

15.10   Further Actions.   Each of the parties agrees that it shall hereafter execute and deliver such further instruments and do such further acts and things as may be required or useful to carry out the intent and purpose of this Agreement and as are consistent with the terms hereof.

15.11   Assignment.   SMG may assign this Agreement without the consent of Physician to any entity affiliated with Steward Health Care or to such other organizations as SMG may determine.   The services called for under this Agreement are personal to Physician. Accordingly, Physician may not assign this Agreement without written consent of SMG.

15.12   Entire Agreement.   This Agreement, along with its Exhibits, represents the entire agreement between SMG and the Physician and supersedes any previous agreements between SMG (or any entity within Steward) and Physician relating to Physician's employment.

15.13   Survival.   The covenants contained in Sections 2.7, 3.3, 3.5, 6, 10, 11, 14, and 15 shall survive any termination or expiration of this Agreement.

[Signatures to appear on following page]

[Remainder of page intentionally left blank]

12

HIGHLY CONFIDENTIAL - FOIA CONFIDENTIALITY TREATMENT REQUESTED                    SHC00000036

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be executed as of the Effective Date, as defined in Exhibit A.

STEWARD MEDICAL GROUP, INC.

By _____
    Michael Callum, M.D.
    President

Date: _____ 6/28/12 _____

THE PHYSICIAN

By _____
    Arvind K. Agnihotri, M.D.

13

<u>EXHIBIT A</u>

| | | |
|---|---|---|
| 1. | Name and Address of Physician (the "Physician"): | Arvind K. Agnihotri, M.D. |
| 2. | Initial Term: | Five (5) years |

3.  Effective Date:  August 31, 2012.  Provided, however, that if Physician fails to provide SMG with all requested payor enrollment materials on or before June 25, 2012, SMG shall have the right to postpone the Effective Date until such time as Physician has been enrolled with all SMG payors.  Provided further, however, that SMG shall have the right to postpone the Effective Date if Physician has not obtained all necessary licenses and registrations or if Physician has not been appropriately credentialed by SMG (and, if applicable, by the Hospital to which the Physician has been assigned by SMG), until such time as the Physician obtains all required licenses and registrations and has been appropriately credentialed.

4.  Practice Location:  736 Cambridge Street, Brighton, MA

5.  Assigned Hospital(s):  St. Elizabeth's Medical Center

6.  Allocation of Professional Time:
| | |
|---|---|
| Clinical Services | 80% |
| Administrative Duties | 20% (as further described on <u>Exhibit D</u>) |
| Total: | 100% |

7.  Hours:  Physician shall devote, on average, a minimum of forty (40) hours per week of Administrative Duties (as defined in <u>Exhibit D</u>) and scheduled professional services relating to treatment of patients of SMG or, at the direction of SMG, of the Assigned Hospital(s).

8.  Base Compensation:  For the first Five (5) years, Physician shall receive an annual base compensation of $750,000 which will be paid out on a bi-weekly basis ("Base Compensation") as follows: (i) an annualized base clinical compensation of $600,000; and (ii) $150,000 as consideration for the performance of the services described in <u>Exhibit D</u>.

For any renewal term(s) following the initial (5) years, Base Compensation will be determined by mutual agreement of the parties, consistent with fair market value for Physician's Specialty.

14

| | | |
|---|---|---|
| 9. | Incentive Compensation: | Beginning January 1, 2013, Physician shall be entitled to receive Incentive Compensation of up to $600,000 per year, during the Initial Term, as described on Exhibit B. |
| 10. | Physician's Specialty: | Cardiovascular Surgery |
| 11. | Vacation*: | Physician shall be eligible for six (6) weeks of vacation per year pursuant to SMG's Human Resources policies and procedures applicable to all employed physicians. |
| | | Physician shall be eligible for an additional four (4) weeks of vacation from the Effective Date through December 31, 2012 pursuant to SMG's Human Resources policies and procedures applicable to all employed physicians. |
| 12. | Health and Dental Insurance*: | Steward Health Care Plan |
| 13. | Life Insurance*: | Steward Health Care Plan |
| 14. | Disability*: | Steward Health Care Plan |
| 15. | Retirement Plan*: | Steward Health Care Plan |
| 16. | Deferred Compensation | Physician will be eligible to participate in the Steward Health Care Deferred Compensation Plan. |
| 17. | Medical Malpractice Insurance: | SMG shall maintain in full force and effect during the term of this Agreement professional malpractice insurance coverage for Physician with minimum limits of $2,000,000 per incident and $6,000,000 in the aggregate, or such higher limits as SMG may from time to time provide for all employed physicians or for physicians in Physician's specialty. Physician understands and agrees that SMG's malpractice policy is a claims-made policy. Physician shall receive tail coverage at the end of the second year following the Effective Date. |
| | | Physician understands and agrees that the professional malpractice insurance covers the Physician only for actions taken within the course and scope of activities pursuant to this Agreement. |
| 18. | Continuing Medical Education ("CME")*: | Physician shall be eligible for time away from the Hospital for CME and CME-related expense reimbursement pursuant to SMG's Human Resources policies and procedures applicable to |

15

HIGHLY CONFIDENTIAL - FOIA CONFIDENTIALITY TREATMENT REQUESTED                    SHC00000039

all employed physicians.

SMG's current CME policy provides for up to five (5) working days of time away and reimbursement of up to $2,500.00 per fiscal year for CME.

| | | |
|---|---|---|
| 19. | Individual Physician Expenses (IPE): | Physician shall be eligible for Individual Physician Expense ("IPE") reimbursement pursuant to SMG's Human Resources policies and procedures applicable to all employed physicians. IPE reimbursement may be used for CME-related expenses that exceed the limits allowed for CME reimbursement. IPE reimbursement may also be used for, but is not limited to: journals, reference books, and medical conferences. |
| 20. | Professional Expenses*: | Physician shall be eligible for professional expense reimbursement pursuant to SMG's professional expense policies and procedures including but not limited to: DEA application, MA controlled substances license, membership in professional organizations provided that membership in such organization is required for Physician to practice Physician's Specialty or to achieve or maintain board certification in Physician's specialty, hospital medical staff annual dues and fees relating to board certification and maintenance thereof. |
| 21. | Sick Leave*: | Physician shall be eligible for sick leave pursuant to SMG's Human Resources policies and procedures applicable to all employed physicians. SMG's current policy offers twelve (12) sick days per year. |
| 22. | Holidays*: | Physician shall be eligible for holidays pursuant to SMG's Human Resources policies and procedures applicable to all employed physicians. SMG's current policy offers ten (10) fixed and one (1) floating holiday per year. |
| 23. | Additional Terms: | (a) Notwithstanding Section 7.1 of the Employment Agreement or any other provision of this Agreement to the contrary, Physician shall retain all rights in intellectual property developed by Physician without the use of resources, sponsorship or support of SMG or Steward Health Care System and any of its subsidiaries ("Intellectual Property"). |
| | | (b) Right of First Opportunity: During the Term, Physician shall, prior to offering to sell, license or transfer any Intellectual Property to any person or entity other than SMG, prior to commercializing any Intellectual Property in any manner, engage in good faith negotiations with SMG (or, at SMG's |

16

option, an affiliate of SMG) to explore the possibility of selling, licensing, transferring, or otherwise commercializing, such Intellectual Property (at a price and upon terms to be negotiated) with SMG. Such exclusive negotiation period shall extend for a period of 30 days. If SMG (or an affiliate) and Physician do not reach agreement, Physician may only sell, transfer, license, or otherwise commercialize, such Intellectual Property subject to Section (c) below.

(c) <u>Right of First Refusal</u>: If, at any time during the Initial Term, Physician desires to sell, license, transfer, or otherwise commercialize (collectively "Transfer") any of the Intellectual Property to a third party (for purposes of this subsection, the "Offeror") who has tendered a <u>bona fide</u> offer (for purposes of this subsection, the "Offer") therefore, Physician shall notify SMG in writing of the Offer (for purposes of this subsection, the "Offer Notice"), which Offer Notice shall include the offer price (the "Offer Price"), and the terms and conditions of the Offer. For 30 days following receipt of such Offer Notice, SMG shall have a right of first refusal to acquire or license the Intellectual Property so offered at the Offer Price and upon all the other terms and conditions of the Offer (which right SMG may assign to any affiliate). If SMG fails to exercise its right of first refusal hereunder within 30 days following receipt of the Offer Notice, Physician may Transfer the Intellectual Property to the Offeror, but only at the Offer Price and upon the same terms and conditions set forth in the Offer Notice, at any time within 60 days after the expiration of the 30 day period. If Physician does not Transfer the Intellectual Property to the Offeror within said 60-day period, then the Physician shall not Transfer the Intellectual Property pursuant to the Offer. If the Offer is revised or subsequently renewed, the foregoing right of first refusal shall renew and the periods within which such rights may be exercised hereunder shall recommence

24. Signing Bonus

One Million Dollars ($1,000,000) - paid by SMG to Physician on Physician's start date. Such payment shall be contingent upon SMG's receipt and approval of the signed employment agreement and upon receipt of all of Physician's completed enrollment and credentialing materials on or before June 25, 2012. In the event this Agreement is terminated prior to the end of Initial Term either: (i) by SMG pursuant to <u>Section 3.2(a)</u> (other than clause (xii) of such section) or by Physician pursuant to <u>Section 3.2(c)</u>; Physician agrees to promptly repay to SMG a pro-rata share of the Signing Bonus based on one-sixtieth (1/60) repayment of such Signing Bonus amount for every month, or

17

SHC00000041

portion thereof, remaining in the Initial Term. Such repayment will be made within thirty (30) days of termination unless arrangements have been made with, and accepted by SMG, for an alternative repayment plan.

*Benefits shall be pro-rated based on FTE status. For the purpose of this Agreement, full-time status means an average of forty (40) hours of scheduled professional services and administrative duties, in the aggregate, per week.

18

Exhibit B

Incentive Compensation

Beginning on January 1, 2013, Physician shall be entitled to receive Incentive Compensation of up to $600,000 per year during the Initial Term. Physician shall receive as Incentive Compensation the amount listed below which corresponds to the number of surgical cardiovascular cases performed by the Division of Cardiac Surgery during each year of the Initial Term of the Agreement. For purposes of calculating Incentive Compensation, a "Surgical Cardiovascular Case" shall mean any surgical cardiac procedure performed by the Division of Cardiac Surgery involving the use of an operating room. Surgical Cardiovascular Cases shall be measured each year from January 1 to December 31. SMG shall make payments to the Physician in the applicable amount set forth below within 90 days after the end of the applicable year.

| Surgical Cardiovascular Cases | Incentive Compensation |
|---|---|
| 400 | $250,000 |
| 401 | $252,000 |
| 402 | $254,000 |
| 403 | $256,000 |
| 404 | $258,000 |
| 405 | $260,000 |
| 406 | $262,000 |
| 407 | $264,000 |
| 408 | $266,000 |
| 409 | $268,000 |
| 410 | $270,000 |
| 411 | $272,000 |
| 412 | $274,000 |
| 413 | $276,000 |
| 414 | $278,000 |
| 415 | $280,000 |
| 416 | $282,000 |
| 417 | $284,000 |
| 418 | $286,000 |
| 419 | $288,000 |
| 420 | $290,000 |
| 421 | $292,000 |
| 422 | $294,000 |
| 423 | $296,000 |
| 424 | $298,000 |
| 425 | $300,000 |
| 426 | $302,000 |
| 427 | $304,000 |
| 428 | $306,000 |
| 429 | $308,000 |

HIGHLY CONFIDENTIAL - FOIA CONFIDENTIALITY TREATMENT REQUESTED                    SHC00000043

| | |
|---|---|
| 430 | $310,000 |
| 431 | $312,000 |
| 432 | $314,000 |
| 433 | $316,000 |
| 434 | $318,000 |
| 435 | $320,000 |
| 436 | $322,000 |
| 437 | $324,000 |
| 438 | $326,000 |
| 439 | $328,000 |
| 440 | $330,000 |
| 441 | $332,000 |
| 442 | $334,000 |
| 443 | $336,000 |
| 444 | $338,000 |
| 445 | $340,000 |
| 446 | $342,000 |
| 447 | $344,000 |
| 448 | $346,000 |
| 449 | $348,000 |
| 450 | $350,000 |
| 451 | $352,000 |
| 452 | $354,000 |
| 453 | $356,000 |
| 454 | $358,000 |
| 455 | $360,000 |
| 456 | $362,000 |
| 457 | $364,000 |
| 458 | $366,000 |
| 459 | $368,000 |
| 460 | $370,000 |
| 461 | $372,000 |
| 462 | $374,000 |
| 463 | $376,000 |
| 464 | $378,000 |
| 465 | $380,000 |
| 466 | $382,000 |
| 467 | $384,000 |
| 468 | $386,000 |
| 469 | $388,000 |
| 470 | $390,000 |
| 471 | $392,000 |
| 472 | $394,000 |
| 473 | $396,000 |
| 474 | $398,000 |
| 475 | $400,000 |
| 476 | $402,000 |
| 477 | $404,000 |
| 478 | $406,000 |
| 479 | $408,000 |
| 480 | $410,000 |

HIGHLY CONFIDENTIAL - FOIA CONFIDENTIALITY TREATMENT REQUESTED          SHC00000044

| | |
|---|---|
| 481 | $412,000 |
| 482 | $414,000 |
| 483 | $416,000 |
| 484 | $418,000 |
| 485 | $420,000 |
| 486 | $422,000 |
| 487 | $424,000 |
| 488 | $426,000 |
| 489 | $428,000 |
| 490 | $430,000 |
| 491 | $432,000 |
| 492 | $434,000 |
| 493 | $436,000 |
| 494 | $438,000 |
| 495 | $440,000 |
| 496 | $442,000 |
| 497 | $444,000 |
| 498 | $446,000 |
| 499 | $448,000 |
| 500 | $450,000 |
| 501 | $451,500 |
| 502 | $453,000 |
| 503 | $454,500 |
| 504 | $456,000 |
| 505 | $457,500 |
| 506 | $459,000 |
| 507 | $460,500 |
| 508 | $462,000 |
| 509 | $463,500 |
| 510 | $465,000 |
| 511 | $466,500 |
| 512 | $468,000 |
| 513 | $469,500 |
| 514 | $471,000 |
| 515 | $472,500 |
| 516 | $474,000 |
| 517 | $475,500 |
| 518 | $477,000 |
| 519 | $478,500 |
| 520 | $480,000 |
| 521 | $481,500 |
| 522 | $483,000 |
| 523 | $484,500 |
| 524 | $486,000 |
| 525 | $487,500 |
| 526 | $489,000 |
| 527 | $490,500 |
| 528 | $492,000 |
| 529 | $493,500 |
| 530 | $495,000 |
| 531 | $496,500 |

HIGHLY CONFIDENTIAL - FOIA CONFIDENTIALITY TREATMENT REQUESTED

SHC00000045

| | |
|---|---|
| 532 | $498,000 |
| 533 | $499,500 |
| 534 | $501,000 |
| 535 | $502,500 |
| 536 | $504,000 |
| 537 | $505,500 |
| 538 | $507,000 |
| 539 | $508,500 |
| 540 | $510,000 |
| 541 | $511,500 |
| 542 | $513,000 |
| 543 | $514,500 |
| 544 | $516,000 |
| 545 | $517,500 |
| 546 | $519,000 |
| 547 | $520,500 |
| 548 | $522,000 |
| 549 | $523,500 |
| 550 | $525,000 |
| 551 | $526,500 |
| 552 | $528,000 |
| 553 | $529,500 |
| 554 | $531,000 |
| 555 | $532,500 |
| 556 | $534,000 |
| 557 | $535,500 |
| 558 | $537,000 |
| 559 | $538,500 |
| 560 | $540,000 |
| 561 | $541,500 |
| 562 | $543,000 |
| 563 | $544,500 |
| 564 | $546,000 |
| 565 | $547,500 |
| 566 | $549,000 |
| 567 | $550,500 |
| 568 | $552,000 |
| 569 | $553,500 |
| 570 | $555,000 |
| 571 | $556,500 |
| 572 | $558,000 |
| 573 | $559,500 |
| 574 | $561,000 |
| 575 | $562,500 |
| 576 | $564,000 |
| 577 | $565,500 |
| 578 | $567,000 |
| 579 | $568,500 |
| 580 | $570,000 |
| 581 | $571,500 |
| 582 | $573,000 |

HIGHLY CONFIDENTIAL - FOIA CONFIDENTIALITY TREATMENT REQUESTED    SHC00000046

| 583 | $574,500 |
| 584 | $576,000 |
| 585 | $577,500 |
| 586 | $579,000 |
| 587 | $580,500 |
| 588 | $582,000 |
| 589 | $583,500 |
| 590 | $585,000 |
| 591 | $586,500 |
| 592 | $588,000 |
| 593 | $589,500 |
| 594 | $591,000 |
| 595 | $592,500 |
| 596 | $594,000 |
| 597 | $595,500 |
| 598 | $597,000 |
| 599 | $598,500 |
| 600 | $600,000 |

23

HIGHLY CONFIDENTIAL - FOIA CONFIDENTIALITY TREATMENT REQUESTED

SHC00000047

<u>Exhibit C</u>

**Attestation**



# Steward Health Care System

## WORKFORCE CERTIFICATION

I hereby acknowledge that I have read and understand the information set forth in the Steward Code of Conduct. I certify that I will comply with these standards in my daily work activities and that I have a responsibility to report any suspected violations of the Code.

I understand adhering to these standards is a condition of employment or business relationship with Steward and that if I have any questions about the Code I must ask my manager for clarification and/or call the Office of Corporate Compliance & Privacy (OCCP).

I certify that I will report to my manager and/or the OCCP any instances where I did not or was unable to comply with the standards set forth in the Code.

Print Name: _ARVIND   AGNIHOTRI_

Signature and Date: _____ 6/28/12

### Instructions to HR: File in Employee Personnel File

24

HIGHLY CONFIDENTIAL - FOIA CONFIDENTIALITY TREATMENT REQUESTED

SHC00000048

## Exhibit D

## ADMINISTRATIVE DUTIES AND RESPONSIBILITIES OF PHYSICIAN

## SECTION 1

**1.1    Administrative Duties**.    Physician hereby agrees to provide the following administrative and management services (the "Administrative Duties") as the Chief of Cardiac Surgery at St. Elizabeth's Medical Center ("Chief"):

The Chief is accountable to the Departmental Chairman and the SMG President for professional and administrative activities within the division, including the quality of care rendered by the members of the division. The Chief also assists the Department Chair, hospital and medical group administration in providing efficient, cost-effective and high quality patient care.

*Specific Accountabilities*
- Participation in planning, organizing and directing clinical, educational and research activities of the division and its members in accordance with the rules and regulations of the hospital and physician practice plan;
- Participation in administration of the division and cooperating with the nursing service, physician practice plan and hospital administration on matters that affect patient care and operational performance including:
  - Optimizing high-quality, cost effective patient care;
  - Coordinating call and vacation coverage to assure continuous, high-quality patient care;
  - Optimizing relationships among the hospital, practice plan and physician community including non-employed physician division members;
  - Providing personnel recommendations for both physician and non-physician employees;
  - Optimizing operational efficiency and financial performance of the associated hospital services; and
  - Optimizing supply chain management.
- Implementing policies and procedures that guide and support the delivery of high-quality care in a cost effective manner;
- Determining the qualifications and competency of divisional personnel who provide patient care services;
- Monitoring the professional performance of all members of the division and recommending and implementing corrective action when required;
- Continuously assessing and improving the care provided by division members;
- Enforcing corrective action when necessary in accordance with hospital and practice plan policy;
- Supervising the care provided by division members as needed;
- Recommending and monitoring the clinical privileges of all department members;
- Enforcing all the rules and regulations of the hospital and practice plan and identifying remedial actions when necessary;
- Providing records of administrative time allocation as required for regulatory body reporting;
- Participating in performance reviews for division members; and
- Other reasonable duties that may be assigned by the Department Chair or President of the SMG from time to time.

25

HIGHLY CONFIDENTIAL - FOIA CONFIDENTIALITY TREATMENT REQUESTED        SHC00000049

**1.2    Administrative Duties Time Records.**    The Physician shall devote in the aggregate, on average, a minimum of 8 hours per week to the performance of the Administrative Duties. Each month, contemporaneously with the performance of the Administrative Duties, the Physician shall prepare a time record in the form and manner attached hereto as <u>Schedule 1.2</u> or in such other form and manner as may be reasonably requested by SMG. The time record shall describe the Administrative Duties performed each day of the month by the Physician and shall document the number of hours devoted each day to such Administrative Duties. The Physician shall submit to the time record to SMG for review and approval not later than ten (10) days after the end of the calendar month in which the Administrative Duties were provided. SMG shall have the right to accept and/or reject time entries in whole or in part not later than the last day of the month in which it receives the time record from the Physician. SMG shall not reject any time entries without first notifying the Physician of the proposed rejection and discussing with the Physician the reasons for it. SMG's determination regarding whether to accept or reject the time entries shall be final. Notwithstanding anything to the contrary herein, SMG shall be under no obligation to pay for inadequately documented Administrative Duties.

**1.3    Documentation.**    In addition, to the time record set forth on <u>Schedule 1.2</u>, Physician shall prepare and submit to SMG or the Assigned Hospital reports and records of such nature and in such form as SMG may reasonably request regarding provision of the Administrative Duties.

**SECTION 2**

**2.1    Fee.**    SMG shall pay Physician as consideration in full for the Physician's provision and performance hereunder of the Administrative Duties a fee of One Hundred and Fifty Thousand Dollars ($150,000) per year (the "Fee"). Notwithstanding anything to the contrary herein, SMG shall be under no obligation to pay for inadequately documented Administrative Duties. Physician understands and agrees that if the Physician ceases to provide the Administrative Duties for any reason, including termination of Physician's role as Chief, SMG shall cease to pay the Fee.

**SECTION 3**

**3.1    Termination of Administrative Duties.**    SMG may terminate Physician's role as Chief (the "Termination") at any time upon the provision of notice of such termination to Physician. Except as otherwise set forth in Section 3.2 below, upon the Termination, neither Party shall have any further obligations regarding the provision or payment for the Administrative Duties.

**3.2    Effect of Termination of Administrative Duties.**    The Physician agrees upon Termination, the Physician shall return to SMG, all reports, files, memoranda, records, computer equipment and software, credit cards, card key passes, door and file keys, computer access codes or disks and instructional manuals, and other physical or personal property which they received or prepared under and pursuant to the provision of the Administrative Duties, and shall not retain any copies, duplicates, reproductions or excerpts thereof without first obtaining the prior written consent of SMG.

26

HIGHLY CONFIDENTIAL - FOIA CONFIDENTIALITY TREATMENT REQUESTED    SHC00000050

**SCHEDULE 1.2**

**ADMINISTRATIVE SERVICES TIME RECORD FORM**

**Physician Time Report**
**Administrative Services**

**For the Month Ended:** _____

**[To be submitted by the 10th of each month]**

| Day of Month | Number of Hours | Description of Services |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| **Total for month:** | | |

**Physician Name (Print):**_____

**Signature of Physician Completing This Form:**_____

27

HIGHLY CONFIDENTIAL - FOIA CONFIDENTIALITY TREATMENT REQUESTED     SHC00000051



**Steward Health Care System LLC**   500 Boylston Street   Boston, Massachusetts 02116
t 617-419-4700   f 617-419-4800   www.steward.org

Michael Callum, MD
Executive Vice President and
President, Steward Medical Group

April 27, 2012

Arvind Agnihotri

Dear Arvind:

This letter will summarize additional areas to which we have come to mutual agreement on outside of your actual employment agreement.

1. You will have full control of all cardiac surgery patients in or outside of the ICU

2. 24/7 service coverage by mid level providers or the equivalent.

3. Commitment for new space and rebranding of cardiac surgery with a marketing budget approval by the Chief Executive.

4. We agree to hire a nurse (your choice) to run the minimally invasive cardiac surgery program.

5. Agree to replace the current bonus model with a contribution margin based redistribution model. This change will be explored at a volume threshold of 500 cases.

6. Build out of new OR

7. Provide $600,000 for purpose of hiring other cardiovascular surgeons (either new or presently employed)

8. Control of cardiac perfusionists.

9. 3rd cardiac surgery OR with division volume greater than 700 cases.

Sincerely,

Michael Callum, MD

HIGHLY CONFIDENTIAL - FOIA CONFIDENTIALITY TREATMENT REQUESTED          SHC00000052