# EXHIBIT 4

## SECOND AMENDMENT TO PHYSICIAN EMPLOYMENT AGREEMENT

THIS SECOND AMENDMENT TO PHYSICIAN EMPLOYMENT AGREEMENT (this "Amendment") is made and entered into as of the _13_ day of _April_, 2018 (the "Execution Date"), to be effective as of January 1, 2018 (the "Amendment Effective Date"), by and between **Steward Medical Group, Inc.**, a non-profit corporation organized under the laws of the Commonwealth of Massachusetts ("SMG"), and **Arvind K. Agnihotri, M.D.**, an individual physician licensed to practice medicine in the Commonwealth of Massachusetts (the "Physician"). (SMG and the Physician shall each be referred to herein as a "Party" and collectively as the "Parties").

### RECITALS

**WHEREAS**, the Physician and SMG entered into that certain Physician Employment Agreement effective as of August 31, 2012, as amended, supplemented or otherwise modified (the "Employment Agreement"), pursuant to which SMG employed Physician to provide certain clinical, educational, research, and/or medical-administrative services; and

**WHEREAS**, the Parties desire to amend the Employment Agreement to address certain matters that have arisen since the Effective Date of the Employment Agreement.

**NOW, THEREFORE**, in consideration of the mutual agreements and covenants hereinafter set forth, the Parties, intending to be legally bound, hereby agree as follows:

1. <u>Defined Terms</u>. All capitalized terms that are not otherwise defined in this Amendment shall have the meaning given to such terms in the Employment Agreement.

2. <u>Amendments</u>. The following provisions of the Employment Agreement shall be amended as follows:

   a. This Agreement will be extended for an additional five (5) years unless sooner terminated as provided in this Agreement.

   b. **Section 3.4** is deleted in its entirety and replaced with the following:

"<u>Suspension; Opportunity to Cure</u>. If SMG determines that the Physician has committed a breach of this Agreement, then SMG may, in its sole discretion, by written notice to the Physician describing the breach: (a) suspend the Physician with or without compensation for a specified period of time; or (b) provide the Physician with a specified period of time in which to cure the breach. Notwithstanding any provision of this Agreement to the contrary, if SMG suspends the Physician under this Section 3.4, then the Physician shall not be permitted to, and shall not, perform any services on behalf of SMG, an Assigned Hospital, or any other SMG affiliate during the period of suspension. SMG's right to impose suspensions or provide opportunities to cure breaches by the Physician as set forth in this Section 3.4 are within the sole discretion of SMG. The fact that SMG may implement such discretionary remedial options does not create the basis for the Physician to claim that the Physician has a right to any such options in lieu of termination."

   c. **Section 8** is amended in its entirety and replaced with the following:

"Intentionally Omitted".

   d. **Exhibit A, Number 6** is deleted in its entirety and replaced with the following:

| "6. Allocation of Professional Time: | Clinical Services: 80% |
|---|---|
| | Administrative Services: 20% (as further described in Exhibit E)." |

   e. **Exhibit A, Number 7** is deleted in its entirety and replaced with the following:

"7. Hours: Physician shall devote, on average, a minimum of forty (40) hours per week of Administrative Duties (as defined in Exhibit E) and scheduled professional services relating to treatment of patients or at the direction of SMG, of the Assigned Hospital(s).

For the purpose of this Agreement, full-time status means forty (40) hours of scheduled professional services and Administrative Duties per week."

   f. **Exhibit A, Number 8** is deleted in its entirety and replaced with the following:

"8. Base Compensation: Commencing on January 1, 2018, Physician shall receive an annual base compensation of $900,000 which will be paid out on a bi-weekly basis as follows: (i) an annualized base clinical compensation of $650,000; and (ii) an annualized amount of $250,000 as consideration for the performance of the services described in Exhibit E.

For any renewal term(s), base compensation will be determined by mutual agreement of the parties, consistent with fair market value for Physician's Specialty. In the event the Parties have not agreed to base compensation terms prior to any renewal term, the base compensation in place at the end of the prior renewal term shall continue in the following renewal term."

   g. **Exhibit A, Number 23** is deleted in its entirety and replaced with the following:

"23. Additional Terms: Notwithstanding Section 7.1 of the Employment Agreement or any other provision of this Agreement to the contrary, Physician shall retain all rights in intellectual property developed by Physician without the use of resources, sponsorship or support of SMG or Steward Health Care System and any of its subsidiaries ("Intellectual Property")."

HIGHLY CONFIDENTIAL - FOIA CONFIDENTIALITY TREATMENT REQUESTED  SHC00000067

  h. **Exhibit A** is amended by adding the following new **Section 25**:

"25. Quality Incentive: Commencing on January 1, 2019, Physician shall be eligible to receive up to $300,000 as incentive compensation for meeting quality and efficiency metrics, which shall be agreed upon by the Parties and documented in an amendment to this Agreement prior to January 1, 2019."

  i. Commencing on January 1, 2019, **Exhibit B** is deleted in its entirety and replaced with a new **Exhibit B** attached hereto as **Attachment 1**.

  j. **Exhibit D** is deleted in its entirety and replaced with the following:

"Intentionally Omitted."

  k. A new **Exhibit E** attached hereto as **Attachment 2** is incorporated into the Employment Agreement.

  3. Effect on the Employment Agreement; General Provisions. Except as set forth in this Amendment, the terms and provisions of the Employment Agreement are hereby ratified and declared to be in full force and effect. Except as otherwise expressly set forth herein, this Amendment shall be governed by the provisions of the Employment Agreement including with respect to choice of law, disputes, and successors and assigns. This Amendment may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Other than the references to the Employment Agreement contained in the Recitals to this Amendment, each reference to the Employment Agreement and any agreement contemplated thereby or executed in connection therewith, whether or not accompanied by reference to this Amendment, shall be deemed a reference to the Employment Agreement as amended by this Amendment.

**[Remainder of Page Intentionally Left Blank]**

**[Signature Page Follows]**

HIGHLY CONFIDENTIAL - FOIA CONFIDENTIALITY TREATMENT REQUESTED SHC00000068

**IN WITNESS WHEREOF**, the Parties have executed this Amendment as of the date first above written.

| STEWARD MEDICAL GROUP, INC. | ARVIND K. AGNIHOTRI, M.D. |
|---|---|
| *[signature]* | *[signature]* |
| Name: Sanjay K. Shetty, M.D.<br>Title: President | |

DM_US 49654745-2.087956.0051

HIGHLY CONFIDENTIAL - FOIA CONFIDENTIALITY TREATMENT REQUESTED

SHC00000069

## ATTACHMENT 1

## EXHIBIT B

Commencing on January 1, 2019, Physician shall be entitled to receive Incentive Compensation of up to $800,000 per year during the term of the Agreement. Physician shall receive as Incentive Compensation the amount listed below which corresponds to the number of surgical cardiovascular cases performed by the St. Elizabeth's Medical Center Division of Cardiac Surgery during each year during the term of this Agreement. For purposes of calculating Incentive Compensation, a "Surgical Cardiovascular Case" shall mean any surgical cardiac procedure performed by the Division of Cardiac Surgery involving the use of an operating room. Surgical Cardiovascular Cases shall be measured each year from January 1 to December 31. SMG shall make payments to the Physician in the applicable amount set forth below within 90 days after the end of the applicable year.

| Surgical Cardiovascular Cases | Incentive Compensation |
|---|---|
| 600 | $400,000 |
| 601 | $401,000 |
| 602 | $402,000 |
| 603 | $403,000 |
| 604 | $404,000 |
| 605 | $405,000 |
| 606 | $406,000 |
| 607 | $407,000 |
| 608 | $408,000 |
| 609 | $409,000 |
| 610 | $410,000 |
| 611 | $411,000 |
| 612 | $412,000 |
| 613 | $413,000 |
| 614 | $414,000 |
| 615 | $415,000 |
| 616 | $416,000 |
| 617 | $417,000 |
| 618 | $418,000 |
| 619 | $419,000 |
| 620 | $420,000 |
| 621 | $421,000 |
| 622 | $422,000 |

| | |
|---|---|
| 623 | $423,000 |
| 624 | $424,000 |
| 625 | $425,000 |
| 626 | $426,000 |
| 627 | $427,000 |
| 628 | $428,000 |
| 629 | $429,000 |
| 630 | $430,000 |
| 631 | $431,000 |
| 632 | $432,000 |
| 633 | $433,000 |
| 634 | $434,000 |
| 635 | $435,000 |
| 636 | $436,000 |
| 637 | $437,000 |
| 638 | $438,000 |
| 639 | $439,000 |
| 640 | $440,000 |
| 641 | $441,000 |
| 642 | $442,000 |
| 643 | $443,000 |
| 644 | $444,000 |
| 645 | $445,000 |
| 646 | $446,000 |
| 647 | $447,000 |
| 648 | $448,000 |
| 649 | $449,000 |
| 650 | $450,000 |
| 651 | $451,000 |
| 652 | $452,000 |
| 653 | $453,000 |
| 654 | $454,000 |
| 655 | $455,000 |
| 656 | $456,000 |
| 657 | $457,000 |
| 658 | $458,000 |
| 659 | $459,000 |
| 660 | $460,000 |

HIGHLY CONFIDENTIAL - FOIA CONFIDENTIALITY TREATMENT REQUESTED

| | |
|---|---|
| 661 | $461,000 |
| 662 | $462,000 |
| 663 | $463,000 |
| 664 | $464,000 |
| 665 | $465,000 |
| 666 | $466,000 |
| 667 | $467,000 |
| 668 | $468,000 |
| 669 | $469,000 |
| 670 | $470,000 |
| 671 | $471,000 |
| 672 | $472,000 |
| 673 | $473,000 |
| 674 | $474,000 |
| 675 | $475,000 |
| 676 | $476,000 |
| 677 | $477,000 |
| 678 | $478,000 |
| 679 | $479,000 |
| 680 | $480,000 |
| 681 | $481,000 |
| 682 | $482,000 |
| 683 | $483,000 |
| 684 | $484,000 |
| 685 | $485,000 |
| 686 | $486,000 |
| 687 | $487,000 |
| 688 | $488,000 |
| 689 | $489,000 |
| 690 | $490,000 |
| 691 | $491,000 |
| 692 | $492,000 |
| 693 | $493,000 |
| 694 | $494,000 |
| 695 | $495,000 |
| 696 | $496,000 |
| 697 | $497,000 |
| 698 | $498,000 |

DM_US 49654745-2.087956.0051

HIGHLY CONFIDENTIAL - FOIA CONFIDENTIALITY TREATMENT REQUESTED    SHC00000072

| | |
|---|---|
| 699 | $499,000 |
| 700 | $500,000 |
| 701 | $501,000 |
| 702 | $502,000 |
| 703 | $503,000 |
| 704 | $504,000 |
| 705 | $505,000 |
| 706 | $506,000 |
| 707 | $507,000 |
| 708 | $508,000 |
| 709 | $509,000 |
| 710 | $510,000 |
| 711 | $511,000 |
| 712 | $512,000 |
| 713 | $513,000 |
| 714 | $514,000 |
| 715 | $515,000 |
| 716 | $516,000 |
| 717 | $517,000 |
| 718 | $518,000 |
| 719 | $519,000 |
| 720 | $520,000 |
| 721 | $521,000 |
| 722 | $522,000 |
| 723 | $523,000 |
| 724 | $524,000 |
| 725 | $525,000 |
| 726 | $526,000 |
| 727 | $527,000 |
| 728 | $528,000 |
| 729 | $529,000 |
| 730 | $530,000 |
| 731 | $531,000 |
| 732 | $532,000 |
| 733 | $533,000 |
| 734 | $534,000 |
| 735 | $535,000 |
| 736 | $536,000 |

HIGHLY CONFIDENTIAL - FOIA CONFIDENTIALITY TREATMENT REQUESTED   SHC00000073

| | |
|---|---|
| 737 | $537,000 |
| 738 | $538,000 |
| 739 | $539,000 |
| 740 | $540,000 |
| 741 | $541,000 |
| 742 | $542,000 |
| 743 | $543,000 |
| 744 | $544,000 |
| 745 | $545,000 |
| 746 | $546,000 |
| 747 | $547,000 |
| 748 | $548,000 |
| 749 | $549,000 |
| 750 | $550,000 |
| 751 | $551,000 |
| 752 | $552,000 |
| 753 | $553,000 |
| 754 | $554,000 |
| 755 | $555,000 |
| 756 | $556,000 |
| 757 | $557,000 |
| 758 | $558,000 |
| 759 | $559,000 |
| 760 | $560,000 |
| 761 | $561,000 |
| 762 | $562,000 |
| 763 | $563,000 |
| 764 | $564,000 |
| 765 | $565,000 |
| 766 | $566,000 |
| 767 | $567,000 |
| 768 | $568,000 |
| 769 | $569,000 |
| 770 | $570,000 |
| 771 | $571,000 |
| 772 | $572,000 |
| 773 | $573,000 |
| 774 | $574,000 |

| | |
|---|---|
| 775 | $575,000 |
| 776 | $576,000 |
| 777 | $577,000 |
| 778 | $578,000 |
| 779 | $579,000 |
| 780 | $580,000 |
| 781 | $581,000 |
| 782 | $582,000 |
| 783 | $583,000 |
| 784 | $584,000 |
| 785 | $585,000 |
| 786 | $586,000 |
| 787 | $587,000 |
| 788 | $588,000 |
| 789 | $589,000 |
| 790 | $590,000 |
| 791 | $591,000 |
| 792 | $592,000 |
| 793 | $593,000 |
| 794 | $594,000 |
| 795 | $595,000 |
| 796 | $596,000 |
| 797 | $597,000 |
| 798 | $598,000 |
| 799 | $599,000 |
| 800 | $600,000 |
| 801 | $601,000 |
| 802 | $602,000 |
| 803 | $603,000 |
| 804 | $604,000 |
| 805 | $605,000 |
| 806 | $606,000 |
| 807 | $607,000 |
| 808 | $608,000 |
| 809 | $609,000 |
| 810 | $610,000 |
| 811 | $611,000 |
| 812 | $612,000 |

HIGHLY CONFIDENTIAL - FOIA CONFIDENTIALITY TREATMENT REQUESTED        SHC00000075

| | |
|---|---|
| 965 | $765,000 |
| 966 | $766,000 |
| 967 | $767,000 |
| 968 | $768,000 |
| 969 | $769,000 |
| 970 | $770,000 |
| 971 | $771,000 |
| 972 | $772,000 |
| 973 | $773,000 |
| 974 | $774,000 |
| 975 | $775,000 |
| 976 | $776,000 |
| 977 | $777,000 |
| 978 | $778,000 |
| 979 | $779,000 |
| 980 | $780,000 |
| 981 | $781,000 |
| 982 | $782,000 |
| 983 | $783,000 |
| 984 | $784,000 |
| 985 | $785,000 |
| 986 | $786,000 |
| 987 | $787,000 |
| 988 | $788,000 |
| 989 | $789,000 |
| 990 | $790,000 |
| 991 | $791,000 |
| 992 | $792,000 |
| 993 | $793,000 |
| 994 | $794,000 |
| 995 | $795,000 |
| 996 | $796,000 |
| 997 | $797,000 |
| 998 | $798,000 |
| 999 | $799,000 |
| 1000 | $800,000 |

DM_US 49654745-2.087956.0051

HIGHLY CONFIDENTIAL - FOIA CONFIDENTIALITY TREATMENT REQUESTED        SHC00000076

## ATTACHMENT 2

## EXHIBIT E

## ADMINISTRATIVE DUTIES AND RESPONSIBILITIES OF PHYSICIAN

## SECTION 1

**1.1 Administrative Duties.** Physician hereby agrees to provide the following administrative and management services (the "Administrative Duties") as the System Chief of Cardiac Surgery for Steward Health Care System ("System Chief"):

The System Chief is accountable to the SMG President for professional and administrative activities within the division, including the quality of care rendered by the members of the division. The System Chief also assists the Department Chairs, hospitals and medical group administration in providing efficient, cost-effective and high quality patient care.

*Specific Accountabilities*
- Participation in planning, organizing and directing clinical, educational and research activities of the division and its members in accordance with the rules and regulations of the hospital and physician practice plan;
- Participation in administration of the division and cooperating with the nursing service, physician practice plan and hospital administration on matters that affect patient care and operational performance including:
  - Optimizing high-quality, cost effective patient care;
  - Coordinating call and vacation coverage to assure continuous, high-quality patient care;
  - Optimizing relationships among the hospital, practice plan and physician community including non-employed physician division members;
  - Providing personnel recommendations for both physician and non-physician employees;
  - Optimizing operational efficiency and financial performance of the associated hospital services; and
  - Optimizing supply chain management.
- Implementing policies and procedures that guide and support the delivery of high-quality care in a cost effective manner;
- Determining the qualifications and competency of divisional personnel who provide patient care services;
- Monitoring the professional performance of all members of the division and recommending and implementing corrective action when required;
- Continuously assessing and improving the care provided by division members;
- Enforcing corrective action when necessary in accordance with hospital and practice plan policy;
- Supervising the care provided by division members as needed;
- Recommending and monitoring the clinical privileges of all department members;

- Enforcing all the rules and regulations of the hospitals and practice plan and identifying remedial actions when necessary;
- Providing records of administrative time allocation as required for regulatory body reporting;
- Participating in performance reviews for division members; and
- Other reasonable duties that may be assigned by the SMG President from time to time.

**1.2  Administrative Duties.** The Physician shall devote in the aggregate a minimum of 8 hours per week to the performance of the Administrative Duties.

**1.3  Documentation.** Physician shall prepare and submit to SMG or the Assigned Hospital reports and records of such nature and in such form as SMG may reasonably request regarding provision of the Administrative Duties.

## SECTION 2

**2.1  Fee.** SMG shall pay Physician as consideration in full for the Physician's provision and performance hereunder of the Administrative Duties a fee of Two Hundred Fifty Thousand Dollars ($250,000) per year (the "Fee"). Physician understands and agrees that if the Physician ceases to provide the Administrative Duties for any reason, including termination of Physician's role as System Chief, SMG shall cease to pay the Fee.

## SECTION 3

**3.1  Termination of Administrative Duties.** SMG may terminate Physician's role as System Chief (the "Termination") at any time upon the provision of notice of such termination to Physician. Except as otherwise set forth in Section 3.2 below, upon the Termination, neither Party shall have any further obligations regarding the provision or payment for the Administrative Duties.

**3.2  Effect of Termination of Administrative Duties.** The Physician agrees upon Termination, the Physician shall return to SMG, all reports, files, memoranda, records, computer equipment and software, credit cards, card key passes, door and file keys, computer access codes or disks and instructional manuals, and other physical or personal property which they received or prepared under and pursuant to the provision of the Administrative Duties, and shall not retain any copies, duplicates, reproductions or excerpts thereof without first obtaining the prior written consent of SMG.

HIGHLY CONFIDENTIAL - FOIA CONFIDENTIALITY TREATMENT REQUESTED   SHC00000078