# EXHIBIT 7

## FIFTH AMENDMENT TO PHYSICIAN EMPLOYMENT AGREEMENT

THIS FIFTH AMENDMENT TO PHYSICIAN EMPLOYMENT AGREEMENT (this "Fifth Amendment") is made and entered into as of the __16th__ day of June, 2022 (the "Execution Date"), to be effective as of April 1, 2022 (the "Amendment Effective Date"), by and between **Steward Medical Group, Inc.**, a non-profit corporation organized under the laws of the Commonwealth of Massachusetts ("Employer"), and **Arvind K. Agnihotri, M.D.**, an individual physician licensed to practice medicine in the Commonwealth of Massachusetts (the "Physician"). (Employer and the Physician shall each be referred to herein as a "Party" and collectively as the "Parties").

### RECITALS

**WHEREAS**, the Physician and Employer entered into that certain Physician Employment Agreement effective as of August 31, 2012, as amended, supplemented or otherwise modified (the "Employment Agreement"), pursuant to which Employer employed Physician to provide certain clinical, educational, research, and/or medical-administrative services; and

**WHEREAS**, the Parties desire to amend the Employment Agreement to address certain matters that have arisen since the Effective Date of the Employment Agreement.

**NOW, THEREFORE**, in consideration of the mutual agreements and covenants hereinafter set forth, the Parties, intending to be legally bound, hereby agree as follows:

1.     <u>Defined Terms</u>. All capitalized terms that are not otherwise defined in this Fifth Amendment shall have the meaning given to such terms in the Employment Agreement.

2.     <u>Amendments</u>. The following provisions of the Employment Agreement shall be amended as follows:

    a.     **Exhibit A, Number 6** is deleted in its entirety and replaced with the following:

6. Allocation of Professional Time:     Clinical Services: 100%

3.     **Exhibit A, Number 7** is deleted in its entirety and replaced with the following:

7. Hours:     Physician shall devote, on average, a minimum of forty (40) hours per week of scheduled professional services relating to treatment of patients or at the direction of Employer, of the Assigned Hospital(s).

4.     **Exhibit A, Number 8** is deleted in its entirety and replaced with the following:

8. Base Compensation:     Physician shall receive an annual base compensation of $856,800 ("Base Compensation") which will be paid out on a bi-weekly basis.

    For any renewal term(s), Base Compensation will be determined by mutual agreement of the parties, consistent with fair market value for Physician's Specialty. In the event the Parties have not agreed to Base Compensation terms prior to any renewal term, the Base Compensation in place at the end of the prior term or renewal term, as applicable, shall continue in the following renewal term.

DM_US 187221539-2.087956.0051

b. **Exhibit A, Number 9** is deleted in its entirety and replaced with the following:

9. Incentive
Compensation:

Physician is eligible to receive Incentive Compensation calculated as described below. This Section will apply to the Employer fiscal year as established from time to time. Currently, Employer's fiscal year is the calendar year.

In any given fiscal year, Employer shall calculate the number of work RVUs ("wRVUs") for personally performed professional services. Any wRVU credit is earned based on reimbursable or "netted" wRVUs, which shall have the values established for Calendar Year 2020 by the Centers for Medicare and Medicaid Services ("CMS") Physician Fee Schedule ("PFS") relative value files. Accordingly, wRVUs will not be credited to the Physician in the event that claims related to a service performed by Physician are rejected by a Payor based on an asserted action or inaction of the Physician that fails to comply with the Payor's billing requirements or other applicable guidelines governing the provision of or billing for services. Moreover, Physician shall receive partial wRVU credit in the event of a modifier adjustment applied by a third party payor in accordance with nationally recognized payor rules and local payor determinations. By way of clarification, any designated health services or other services performed under the physician's supervision and/or billed to Medicare under the Physician's NPI on an "incident to" basis are not personally performed by the Physician and, therefore, any wRVUs associated with such services are excluded from Physician's Compensation.

If in any given fiscal year, the netted wRVUs as described above exceed 9,240 (the "wRVU Threshold"), Physician shall receive a rate of $60.00 multiplied by the number of wRVUs earned (as described above) in excess of the wRVU Threshold.

Employer shall review the wRVU Threshold on an annual basis and may adjust the wRVU Threshold from year to year. Employer shall notify Physician of any change to the wRVU Threshold prior to the beginning of the fiscal year in which the change shall apply. Notwithstanding the foregoing or anything herein to the contrary, in the event that a change in applicable law, rule, or regulation is enacted or issued subsequent to the Execution Date, and such change would materially impact or alter the amount of Incentive Compensation payable to Physician under this Section, Employer may in its sole discretion and upon notice to Physician, adjust the above-stated rate by which earned wRVUs in excess of the wRVU Threshold are multiplied to determine Physician's Incentive Compensation.

Employer shall pay Physician Incentive Compensation, if applicable, in accordance with the formula set forth above within one hundred eighty (180) days of the end of each fiscal year.

The Physician must be employed by Employer at the time of the Incentive Compensation payment, as applicable, in order to receive any payment under this Section. In addition, Physician must annually complete all Trainings in

HIGHLY CONFIDENTIAL - FOIA CONFIDENTIALITY TREATMENT REQUESTED    SHC00501307

order to be eligible to receive any payment under this Section.

Notwithstanding the foregoing or any other provision herein to the contrary, in no event will Physician receive Compensation which exceeds fair market value for the Specialty.   "Compensation" means Physician's Base Compensation together with Physician's Incentive Compensation as described above, and any other compensation provided to Physician under this Agreement.

       c.     For purposes of clarity, pursuant to that certain Fourth Amendment, **Exhibit A, Number 25: Quality Incentive Compensation** is deleted in its entirety and replaced with the following:

"Intentionally Omitted."

       d.     **Exhibit A** is amended by adding the following new **Number 26**:

| | |
|---|---|
| 26. Compensation for National Director of Quality, Cardiac Surgery Consultative Services: | At the request of Employer, Physician shall receive $325.00 per hour for consultative services as National Director of Quality, Cardiac Surgery ("Consultative Services") as follows:<br><br>Physician hereby agrees to provide the following administrative and management services as the Steward Medical Group National Director of Quality, Cardiac Surgery on a consultative basis.   The parties agree that Physician is not authorized to provide Consultative Services without express direction from SMG senior leadership and shall be directly accountable to the SMG President.<br><br>Activities Include:<br>•    Assist the Department Chairs, regional hospitals, and medical group administration in providing high-quality, efficient, and cost-effective, patient care.<br>•    Attend Service Line Leader meetings to discuss strategies, initiatives, and policies.<br>•    Provide specific leadership and help communicate the importance of high-quality clinical care, compliance, and patient outcomes.<br>•    Engage with hospital leadership teams across multiple markets with regards to ensuring that clinical quality is meeting or exceeding system expectations.<br>Physician Relationships:<br>•    Establish relationships with all SMG providers in cardiac surgery and related specialties<br>•    Maintain open communication with all SMG providers. This includes, and is not limited to, sharing updates about SMG and specialty initiatives regarding clinical quality, being available for feedback, listening to concerns, and resolving issues when appropriate.<br>Operational/Strategic:<br>•    Evaluate current staffing models within each Steward Medical Group market and make recommendations on how to appropriately staff each market to ensure better patient outcomes/clinical quality.<br>•    As requested, facilitates alignment between improvement initiatives and the organizations strategic plan; execution of the strategies and tactic necessary |

DM_US 187221539-2.087956.0051

HIGHLY CONFIDENTIAL - FOIA CONFIDENTIALITY TREATMENT REQUESTED         SHC00501308

to successfully improve the outcomes and results of the services.
- Focuses on better healthcare value and quality, including the improvement of clinical outcomes, patient experience, patient safety, costs, revenue, productivity, efficiency, employee and physician satisfaction, and process reliability.
- Assists in the establishment of operational performance measurements and the monitoring of trends in key performance indicators to evaluate effectiveness, reliability, efficiency, etc. using available information systems data. Where other data is necessary but not readily available, will design and implement appropriate data collection. Uses data from appropriate external sources, including comparative databases.
- Monitor capacity/needs throughout system to assess recruitment needs, re-deployments, regionalization, or terminations. Contribute to Enterprise Policies & Procedures relevant to Service Line Specialties.
- Serve as a clinical expert/mentor for leadership across system, including SHCN affiliated practices, regarding inpatient clinical issues and other issues of concern related to Service Line (e.g., regulatory, legal/malpractice) and clinical best practices.

Physician shall submit time sheets to Employer for review and approval in substantially the form and manner attached hereto as Attachment 1, or such other form and manner as Employer may reasonably request, within 10 days after the end of the calendar month in which the Consultative Services were provided. Employer shall have the right to accept and/or reject submitted time sheets not later than the last day of the month in which it receives the time sheets from the Physician. Payment, if applicable, shall be made the following pay period after Employer's approval of Physician's time sheets. Notwithstanding anything to the contrary herein, Employer shall be under no obligation to pay for inadequately documented Consultative Services.

e. For purposes of clarity, pursuant to that certain Fourth Amendment, **Exhibit B: Incentive Compensation** is deleted in its entirety and replaced with the following:

"Intentionally Omitted."

f. For purposes of clarity, pursuant to that certain Fourth Amendment, **Exhibit E: System Chief Administrative Duties and Responsibilities of Physician** is deleted in its entirety and replaced with the following:

"Intentionally Omitted."

g. For purposes of clarity, pursuant to that certain Fourth Amendment, **Exhibit F: Quality Incentive Compensation** is deleted in its entirety and replaced with the following:

"Intentionally Omitted."

5. Effect on the Employment Agreement; General Provisions. Except as set forth in this Fifth Amendment, the terms and provisions of the Employment Agreement are hereby ratified and declared to be in full force and effect. Except as otherwise expressly set forth herein, this Fifth Amendment shall be governed by the provisions of the Employment Agreement including with respect to choice of law, disputes, and successors and assigns. This Fifth Amendment may be executed in one or

HIGHLY CONFIDENTIAL - FOIA CONFIDENTIALITY TREATMENT REQUESTED                    SHC00501309

more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Other than the references to the Employment Agreement contained in the Recitals to this Fifth Amendment, each reference to the Employment Agreement and any agreement contemplated thereby or executed in connection therewith, whether or not accompanied by reference to this Fifth Amendment, shall be deemed a reference to the Employment Agreement as amended by this Fifth Amendment.

**IN WITNESS WHEREOF**, the Parties have executed this Fifth Amendment as of the date first above written.

**STEWARD MEDICAL GROUP, INC.**

Name: Amy M. Guay
Title: President

**ARVIND K. AGNIHOTRI, M.D.**

DM_US 187221539-2.087956.0051

HIGHLY CONFIDENTIAL - FOIA CONFIDENTIALITY TREATMENT REQUESTED                    SHC00501310

## Attachment 1

## CONSULTATIVE SERVICES TIME RECORD FORM

### Physician Time Report

**For the Month Ended:** _____
[To be submitted by the 10th of each month]

| Day of Month | Number of Hours | Description of Services |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
| **Total for month:** |  |  |

**Physician Name (Print):** _____

**Signature of Physician Completing This Form:** _____

DM_US 187221539-2.087956.0051